ABBEN, P.
The plaintiffs in error preferred a petition to the Circuit court of the city of Richmond, which was verified by-affidavit, and by which they prayed for a rule against the defendant in error to "'show cause why he should not be prohibited from inflicting a fine of twenty dollars upon the plaintiffs for each day they should continue to hold the exclusive possession of a piece of ground on the western side of twelfth street in the said city, by enclosing the same. The proceeding is founded on the Code, ch. 155, p. 612; which provides that it shall not be necessary to file a suggestion on any application for a .writ of prohibition, but the same may be applied for on affidavit only.
Upon filing the petition, treated as an affidavit, the rule asked for was awarded; the defendant made a return thereto, and having afterwards required the plaintiffs to file a declaration, one was filed, to which the defendant demurred generally, and also tendered a special plea, to which the plaintiffs objected, and moved the court to reject it: of which motion the court took time to consider.
At another day the general demurrer to the declaration was sustained; which rendered it unnecessary to pass upon the special plea tendered and objected to; and the same is not copied into the record. To the judgment sustaining the general demurrer refusing the prohibition and dismissing the plaintiffs’ application, a supersedeas has been awarded by this court.
In argument here, it is insisted on behalf of the defendant, that there was a variance between the affidavit and the declaration ; and for that reason the demurrer was properly sustained.
Conceding, for the purposes of this case, that a suggestion is in the nature of a writ, and the affidavit under the Code comes in the place of the suggestion, the objection could not be taken in this mode. The Code, ch. 171, § 18, declares that a defendant on whom process summoning him to answer, appears to have been served, shall not take advantage of any variance in the writ from the declaration, unless the same be pleaded *in abatement. The objection goes not to the substance but to the form; for taking the matters averred to be true, enough appears to entitle the plaintiffs to judgment as far as relates to the merits of the cause, provided the law be as they suppose it to be. Being matter of form, the objection, in the absence of the provision in the Code referred to, could only be taken by special demurrer; and the effect of the Code, ch. 171, § 30, 31, is to abolish special demurrers in all cases: the 30th section prescribes the form, being the form of a general demurrer, and the 31st declares that the court shall not regard on a demurrer any defect or imperfection in the declaration or pleadings, whether it has heretofore been deemed mispleading or insufficient pleading, or not, unless there be omitted something so essential to the action or defence that judgment according to law and the very right of the cause cannot be given.
Passing by this formal objection, the question on the merits is whether, upon the matters averred in the declaration, it was within the rightful jurisdiction of the mayor to proceed to impose a fine for an alleged obstruction in the place claimed to be a street of the city. It is said in Paley on Convictions, p. 1, that the examination and punishment of offences in a summary ■manner by justices of the peace, out of their sessions, and without the intervention of a jury, or an open trial, are founded entirely upon a special authority conferred and regulated by statute. The authority of the mayor of the city to impose fines for obstructing the streets is conferred by the act passed March 30, 1852, Sess. Acts, p. 259, entitled an act revising and reducing into one act the provisions of the charter of the city of Richmond. The 1st section provides, that the 54th chapter of the Code of *951 Virginia shall be applicable to the said corporation and the council of the city, as far as may be consistent with the charter. *The 17th section of that chapter confers the powers to lay off streets, &c., and have them kept in good order: and to carry into effect these and other powers, ordinances and by-laws may be made, and fines prescribed for violations thereof. Similar authority is granted to the city council by the charter, 4 26, p. 263; and by the 50th section of said act it is provided, that any claim to a fine or penalty under the act, or any ordinance or bylaw of the city, if it be limited to an amount not exceeding twenty dollars, shall be cognizable by the mayor, recorder or any alderman of the city. In pursuance of the authority so conferred, and to punish for a violation of an ordinance of the common council for preventing obstructions of the streets and allejrs of the city, a copy of which ordinance is set forth in the declaration, the mayor proceeded to impose the fine which has led to the present controversy. In enforcing this ordinance, the mayor must necessarily, in ordinary cases, enquire into the fact whether the place where the obstruction is put, is a street or public alley, and his judgment and sentence on that, as upon every other question properly falling within his conceded jurisdiction, is conclusive and final. But the qtiestion still remains, whether, by the principles of the common law, a bona fide claim of title to the property does not oust the jurisdiction of the justice or officer exercising such summary jurisdiction. And the principle involved is, whether the title to lands may, in this collateral way, be subjected to the jurisdiction of police officers, proceeding without writ, deciding without the intervention of a jury, who hold no court of record, and therefore no record of their proceedings is preserved, and from whose judgment there is no appeal. The recognition of such a jurisdiction might in effect submit the whole beneficial interest in the freehold to the absolute control of such inferior tribunal: for by successive fines the *right of the owner might be so impaired as to be of no value.
The author before referred to, Paley on Convictions, p. 48, states, “that it has always been held as a maxim, that where the title to property is in question, the exercise of a summary jurisdiction by-justices of the peace is ousted. This principle is not founded on any legislative provision, but is a qualification which the law itself raises in the execution of penal statutes; and is always implied in their construction.” For the first proposition he refers to a declaration of Lord Ch. J. Holt in Regina v. Speed, 1 Ld. Ray. R. 583, who is reported to have said, that “without doubt if the defendant has but the color of title, the justices have no jurisdiction.” Though whether he did use the expression thus imputed to him, has more recently been doubted.
But for the proposition that this principle is not founded on any legislative provision, but is a qualification which the law itself raises in the execution of penal statutes, no authority is cited.
The principle, I conjecture, flows from a higher source than any mere judicial decision. It is derived, as it seems to me, from magna charta itself, which declared that no freeman should be taken or imprisoned, or be disseized of his freehold, but by the lawful judgment of his peers, or by the law of the land. Coke, in his reading anon magna charta, 2 Inst. 48, 50, says that 1 ‘by lawful judgment of his peers,” is meant the verdict of his equals, and by “the law of the land,” the due course and process of the law. That the phrase is defined by 37 Edw. 3, ch. 8; and the words “by the law of the land,” are rendered “by due process of law:” that is, he continues, by indictment or presentment by good and lawful men, where such deeds are done in due manner, or by writ original of the common law.
*In consequence of this express inhibition, no case has been referred to in which an attempt has been made to hold or maintain a plea by mere plain concerning a freehold, where the freehold was directly in issue; and in the recent statute of 9 and 10 Viet, in relation to County courts, ch. 96, 4 58, it is provided that such courts shall not have cognizance of any action of ejectment, or in which the title of any corporeal or incorporeal hereditament comes in question.
In Comyn’s Digest, title County (O 8), treating of the County court, it is laid down, “that it cannot hold plea by plaint concerning freehold; and therefore, ii a man in a plaint in replevin justifies, avows, or makes cognizance as in the freehold of B, the jurisdiction of the County court is ousted.” Again: “If the County court holds plea where it has no jurisdiction, the proceeding is coram non judice and void: and trespass lies against any who act under the process of the court. And if freehold or other plea which ousts the jurisdiction be pleaded, all the subsequent proceedings are void.” And the authority for these positions which Comyn refers to is Cannon v. Smallwood, 3 Levinz 203. Th::t cf.sc was referred to and recognized as a controlling authority in Tinniswood v. Pattison, 54 Eng. C. L. R. 243. There, in trespass for taking and impounding the plaintiff’s beasts, the defendant pleaded a suit in the County court by J. S. against the now plaintiff, where the then defendant pleaded freehold in A, and justified the taking damage feasant in said freehold of A. The then plaintiff to this conusance pleaded in bar that A was bound to repair fences, and that for default of repair the beasts escaped. On this plea issue was taken, and the jury found the fences out of repair, and the plaintiff had judgment, and precept issued thereon, under which the now defendant, being bailiff, seized and impounded the beasts. The effect of the pleadings was *952 a justification of the seizure under ^process issued upon a judgment of the County court. Upon demurrer, it was objected that the judgment was void et coram non judice, because after freehold pleaded the County court had not jurisdiction, because freehold cannot be tried without writ “sans brief” in the Norman French of the report. It was replied, that the freehold was not tried there, but a collateral matter, whether the fences were in repair. But the court held that by the trial a charge ou the freehold was put in issue, and that the County court had no power after freehold pleaded to proceed in the cause, directly or collaterally, and the proceedings were coram non judice and void. The case in 54 Eng. C. C. L. 243, of Tinniswood v. Pattison, was very similar in its facts; and Tindal, C. J., said, that the case of Cannon v. Smallwood was a distinct authority to show that the County court has lost its jurisdiction in the matter, and that the plaintiff below should have proceeded by the queen’s writ of replegiare facias: showing that the principle of magna charta-, as expounded by Coke, was at the foundation of the objection.
The judge refers to Coke’s Commentary on the Statute of Gloucester, ch. 8, 2 Inst. 310, 11. Speaking of the jurisdiction of the sheriff in the County court, he says he shall not hold plea of trespass for taking away charters concerning inheritance of freehold; for it is a maxim of the law, that pleas concerning charters or writings relating to the freehold should not be pleaded without the king’s writ in courts not of record, according to the law and custom of England. These authorities, ancient'and recent, show what is and ever has been the law of England, and the principle on which it is founded. To these may be added Fitz. Nat. Brev. 47 B; Rex v. Speed, 1 Ld. Raym. 583; Regina v. Burnaby, 2 Id. 900.
In Virginia, it is not pretended that justices of the *peace or officers of corporations have ever been empowered by any statute to try, without writ, titles to land in civil causes. The eleventh article of the bill of rights declares, that in controversies respecting property, and in suits between man and man, the ancient trial by jury of twelve men is preferable to any other, and ought to be held sacred.
Though this provision may not amount to a positive restriction upon the power of the legislature in reference to all controversies respecting property of every kind, and suits between man and man, no matter what may be the amount in dispute, it is nevertheless a provision which should always be kept in mind in construing the acts of the legislature; and we are not warranted in giving such an interpretation to their acts as to impute to the legislature the intention of setting aside this article by mere implication. In civil cases we see no such jurisdiction is conferred, and it would be a strained construction which would impute to the legislature the inten- | tion to confer such jurisdiction where such officers were invested with power to impose fines, and the question arose collaterally. We have for instance a provision in the Code, copied from former laws, p. 450, ch. 101, % 2, subjecting a person to a fine of three dollars for each offence of shooting, hunting, &c., within the enclosed bounds of another person, without license from the owner. It would be a forced construction which would authorize the justice, upon complaint for violating this law, to adjudicate upon the question of title: The contrary was held by all the judges in The Queen v. Cridland, &c., 90 Eng. C. L. R. 853, a proceeding under a statute imposing a fine for committing a trespass by entering on land in search or pursuit of game; all concurring that where there was a bona fide claim of title set up, the justices have no longer jurisdiction to proceed to a summary conviction. The regard which the legislature *has always had for this right to a freehold is further manifested by provisions contained in the laws regulating appellate jurisdiction, conferring as a general rule such appellate jurisdiction where the title or bounds of land shall be drawn in question. The principle is recognized also in the 11th section, article 6, of the present constitution, declaring in what cases appellate jurisdiction may be conferred on this court, and providing that it shall not have jurisdiction in civil causes, where the matter in controversy, exclusive of costs, is less in value or amount than five hundred dollars, except in controversies concerning the title or boundaries of land, &c.
The question has never been presented for adjudication in any case in Virginia, where the justice was exercising the jurisdiction conferred to proceed to a summary conviction. But that a justice of the peace had no jurisdiction to try titles to freehold or any fee simple estate or interest in an incorporeal hereditament, was expressly determined in Miller v. Marshall, 1 Va. Cas. 158, where a prohibition was awarded to the justice who was proceeding to try a cause before him for the recovery of a rent reserved by deed to one and his heirs forever. On this branch of the case I conclude that, whether upon a trial of a civil cause, or in the exercise of the general power conferred bj’- statute to proceed to a summary conviction, the justice, mayor, or any such subordinate officer, is bound to dismiss his summons immediately on being convinced that the case involves a bona fide claim of title to real estate, unless the jurisdiction is expressly conferred by statute. Nor is there any difference in this respect between corporeal and incorporeal hereditaments. Indeed, most of the cases where the question arose were cases involving the right to incorporeal hereditaments, or some charge or servitude sought to be imposed on the land.
Miller v. Marshall was the case of a fee simple interest *in rent; Cannon v. Smallwood, an obligation to *953 repair fences — a servitude on the land. In Randall v. Crandall, 6 Hill’s R. 342, an action of trespass guare clausum- — the defence that the locus in quo was a public highway, raised the question of title to land, which could not be tried before a justice, as a right of way oyer another’s land affects the owner’s title. In Striker v. Mott, 6 Wend. R. 465, under a statute that a justice should not have cognizance where the title to lands came in question, it was held that a claim to a right of way involves the title to the premises over which it passes. In Pritchard v. Atkinson, 4 N. Hamp. R. 291, under a statute giving justices jurisdiction to try causes where the son in controversy ciid not exceed a certain amount, except .such wherein the title to real estate might be drawn in question, covenant was brought assigning as a breach that the land was encumbered with a highway, and one dollar damages recovered; and it was held the justice had no jurisdiction. The question of title was necessarily involved, as such an easement, a highway, was a real franchise. See also Heaton v. Ferris, 1 John. R. 146; Saunders v. Wilson, 15 Wend. R. 335; Spear v. Bicknell, 5 Mass. R. 125; People v. Ouandaga Common Pleas, 2 Wend. R. 263, to the same effect.
Regarding it to be the law, that the jurisdiction of the mayor to convict summarily is ousted where a claim oí title to real estate is set up bona, fide, and that the claim to hold it discharged from such an easement as a highway, which is a real franchise, is a controversy concerning the title to real estate, it remains to enquire, in the third place, whether the matters averred in the declaration, or any of them, admitted to be true by the demurrer, do show such bona fide claim by the plaintiff's as to entitle them to the prohibition prayed for?
The declaration sets out that the plaintiffs theretofore '“'instituted an action of ejectment for the property in question against the city of Richmond ; that in said suit they claimed the fee simple; and that by default they recovered judgment against the city, which being revived, execution issued thereon, and possession was delivered by the sheriff. Whereupon the plaintiffs forthwith enclosed it, and have ever since held the same so enclosed, in their exclusive possession and occupation, as by said judgment and execution thereupon made, they were authorized to do.
It then sets forth the proceedings of the mayor under the ordinance of the common council of the city imposing fines for obstructing the streets or public alleys, and that in obedience to his gummons they appeared before him and’showed for cause why they should not be fined: First — that the judgment aforesaid had conclusively ■determined, that the said piece of ground was no part of any street in the city of Richmond, and that the maj'or had no power to re-examine and re-try a question already adjudged. Secondly — that if that question was not determined by the judgment in ejectment, still that the plaintiffs did then and there bona fide claim and still do bona fide claim the fee simple of said land and the right to the exclusive possession thereof, and did then and there bona fide deny and still do bona fide deny the existence of any right in any quarter to use or occupy the same as a street of the city or as a highway of the commonwealth; while the mayor in that proceeding was asserting a right of the city to use and occupy the land as a street of the city.
The cause first alleged why he should not be fined, rests upon the effect of the judgment in ejectment and possession delivered or the execution issued on the judgment. That this without more and irrespective of any other claim of title conclusively determined that the piece of ground was no part of any street, &c. '“'The cause shown looks rather to the propriety of imposing a fine, upon the proof, than to an assertion of title with any view to oust the jurisdiction. Treating it however as a claim resting solely on the effect of the judgment and execution, the mayor it seems to me, would have had a right to consider whether in passing on the question, he looked to the claim of title so set up, or in any wa3r passed upon it. Notwithstanding the strong language used or attributed to Holt and some of the judges, that any color or pretence of title should oust the jurisdiction of the justice, I think the rule.as laid down in The Queen v. Cridland, 90 Eng. C. L. R. 853, is the more reasonable; that is, that the justices have jurisdiction to try the fact whether the claim is bona fide made, or I may add, whether it sets up any claim whatever in opposition to the right asserted. The right to the public easement, if it existed, was incorporeal, and belonged to the public or the commonwealth ; and although under the charter the control or superintendence of the street or highway be conceded to the municipal authority, all prosecutions for obstructing, &c., are conducted in the name of the commonwealth. The easement comprehends no interest in the soil. “The right of freehold (says Swift, J., in Peck v. Smith, 1 Conn. R. 103) is not touched by establishing a highway, but continues in the original owner of the land in the same manner it was before the highway was established, subject to the easement. The dedication or laying out of a street within a corporation does not affect the ownership of the soil, and however enlarged the easement may be, when within the limits of a corporation, in order to the beneficial use of it, and to effect the purposes intended when the easement was created; subject to such use, whether enlarged or limited, the title remains in the owner. Notwithstanding the easement, the owner retains many and valuable interests. *He is entitled to the minerals under it; he may make any use of it not inconsistent with the enjoyment of the easement; as is fully shown in the notes of Hare & Wallace to Dovaston v. Payne, 2 Smith’s Leading Cases 90 (44 L. Li. 141), where the authorities are col *954 lected. Amongst the rights of the owner is the right to maintain trespass: the point decided in Peck v. Smith, 1 Conn. R. 103, and in Lade v. Shepherd, 2 Strange R. 1004: though to maintain trespass he must have not only the right to possession, but the actual possession.
The right of the owner to recover in ejectment was affirmed by the Court of king’s bench in Goodtitle v. Alker, 1 Burr. R. 133.
Since this decision, the doctrine seems to be considered as settled in England, and the elementary writers lay it down as established law. Runnington 130; Adams 18, 19; Saunders Pl. & Ev. 98. It has been recognized by almost every judge who has had occasion to refer to it in America; as may be seen by reference to the note of Wallace & Hare, ubi supra; and followed in Cooper v. Smith, 9 Serg. & Rawle 26; Alden v. Murdock, 13 Mass. R. 256; and see also Watrous v. Southworth, 5 Conn. R. 305; Wooster v. Butler, 13 Id. 309; Reed v. Leeds, 19 Id. 182.
A doubt has been cast upon the right of the owner of the soil of a highway or public square, to recover in ejectment against one who takes exclusive possession of the ground, by the cases of the City of Cincinnati v. White, 6 Peters’ R. 431; and Barclay v. Howell’s lessee, Id. 498; cases much relied on'in the argument here. The cases are reviewed in the note of Wallace & Hare, and it is shown that the remarks of the learned judge there were the extrajudicial dicta of an individual; for it was obviously well understood that the cases were carried to the Supreme court for the settlement of the right of the public to the easement; *and as the plaintiff claimed exclusive possession, the court, in deciding against that claim, probably did not feel called upon to decide on the right to recover subject to the easement, for which the plaintiff cared nothing. Whatever however may be the law of that forum, in Virginia the rule has been established by an authoritative decision of the very point in accordance with the settled doctrine of the English courts and the courts of this counr try, so far as we have been referred to them, except the Supreme court.
In Bolling v. Mayor of Petersburg, 3 Rand. 563, which was a writ of right by the demandant against the corporation of Petersburg, a special verdict was found, showing title in the demandant and his ancestors, and finding certain proceedings by which a public road was established over the tract of land, which said road, so established, had always been used as a public road from that time; and that the land in controversy was a part of said road. There were other findings, showing the erection of a wharf on said land by the corporation, and that it had exclusive possession of the wharf, &c.
Judge Carr, in his opinion, in which the other judges concurred, after disposing of the question of title, says, “The next question is as to the public highway. Does this disable the demandant from recovering the land ? It certainly would not in England, as many cases show.” The judge then refers to Lade v. Shepherd, 2 Strange’s R. 1004; quotes at length from the opinion of Lord Mansfield in Goodtitle v. Alker; refers also to 1 Wilson 107; 6 East 154; Bac. Abr. title Highways, letter B; and then proceeds, “It is clear from these cases (and others might be added), that in England the right of way has been considered as an easement not affecting the right of soil. ’ ’ And he then shows that the laws of Virginia *had not changed the common law. And the other questions being determined in favor of the demand-ant, judgment was rendered in his favor.
The court did not rest its opinion upon any supposed distinction between seizin and possession. They took seizin to be as Eord Coke in 6 Rep. 57b, defines it as being identical with possession, and rely upon the case in 2 Strange 1004, which was trespass for a wrong 'done to the possession.
It results from these authorities, that no question as to the easement was or could have been raised in the ejectment. Whether the ownership of the soil remained in the original proprietor, or vested in the lot owners whose lots bounded on the street, or was vested in the corporation, did not affect the public easement. As to the public, represented by the commonwealth, if entitled to the easement, a controversy respecting the ownership of the soil, was. res inter alios acta, and however determined, having no effect whatever on the public right. The judgment, if it could be used in evidence in a controversy affecting the public franchise, could only be used for the purpose of showing an entry under a claim of right, and to define the extent of the claim and possession; and not as showing or tending to show that no such real franchise attached to the property. If the case had rested on the first ground assigned in the declaration, I think the demurrer would have been properly sustained.
But the second cause assigned, admitted by the demurrer to be true, does show a bona fide claim to the exclusive possession and title, and denies that the land was subject to any easement in the public, or any right in any quarter to use or occupy the same as a street or as a highway. This claim, thus bona fide made, covers the whole ground; it involved the enquiry as to the existence of such an easement, an enquiry *which the mayor had no right to enter into, or jurisdiction to try or determine".the question. And the demurrer should therefore have been overruled.
If the judgment in the ejectment, the record of which is exhibited, was entitled of itself to the conclusive effect claimed for it, there could be no reason for remanding the cause for any other proceedings, as the record speaks for itself, and could not be contradicted; and therefore it became nec *955 essary to examine the question so elaborately discussed.
It is difficult to perceive what question of fact was intended to be raised by the plea offered and objected to, for if would seem, from the affidavit of M. Bates, made part of the mayor’s return, that he gave evidence tending to prove a dedication of the place in controversy for a public street, and the enjoyment of the easement by the public, showing that there must have been some claim of and enquiry into the title before the mayor. But this is matter not appearing on the demurrer to the declaration, and therefore can have no influence on the judgment to be rendered on the demurrer.
It results from the foregoing examination of the questions presented and argued, that in proceedings to convict summarily before a justice or other officer exercising' the like powers, if a claim to the freehold is set up in the defendant or those for whom he acts, the officer has jurisdiction to try the fact, whether the claim is bona fide made: If it be so made and the jurisdiction is ousted, he cannot enquire into the validity of the claim, and he has no power in such case to proceed to a summary conviction. That the doctrine applies as well to the case where an incorporeal hereditament or real franchise is claimed or resisted as to a controversy touching the freehold itself: That the recovery in ejectment by the judgment referred to, was subject to any easement in the public to use the '’same as a street or highway, and the right of the public to the easement was not drawn in question or in any way affected by a controversy between the plaintiffs and the city as to the ownership of the soil. But that under the second cause assigned in the declaration it appears, there was a bona fide claim to the exclusive enjoyment of the property, free from the right of way or easement claimed for the public; and that such claim so made, could not be tried by the mayor, but ousted his jurisdiction. It is to be regretted that in a matter, -where the public convenience is so much involved, that the right to the easement itself had not been presented either by an action of trespass against the city authorities for removing the obstruction, or some proceeding to abate the alleged nuisance, so that the right might have been settled b3’ a court of record having competent authority. The question before us does not reach the merits, but merely the power of the mayor to en-quire into them. The judgment must be reversed with costs. And .this court proceeding &c. it seems that the declaration &c. are &c. ; therefore considered that the demurrer be overruled, and the cause is remanded for a decision of the motion to reject the plea tendered, and for further proceedings: which is ordered to be certified.
The Other judges concurred in the opinion of Allen, P.
Judgment reversed.